IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERIK KILLINGSWORTH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 05 C 941 |
| | ) | |
| | ) | Judge Mark Filip |
| RAY BENSKO, Warden, Logan | ) | |
| Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner, Erik Killingsworth ("Killingsworth" or "Petitioner"), has filed a petition for

writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254, on the grounds that (1) he was

not fully advised of his constitutional rights at the time of his arrest, and (2) his trial counsel was

ineffective under the teachings of *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to

move to suppress his confession. (D.E. 1 ("Petition").)[1] For the reasons stated below, the

Petition is denied.

I.    BACKGROUND FACTS

A.    Underlying Events

Petitioner is in the custody of the Illinois Department of Corrections ("IDOC") following

his 2001 conviction in the Circuit Court of Cook County, Illinois, for possession of a controlled

substance within public housing with intent to deliver. (D.E. 14, Ex. D (opinion of Illinois Court

of Appeals) at 1.) Following a bench trial, Petitioner was convicted and sentenced to 12 years in

---

[1] The various docket entries in the case are cited as "D.E. __."

the custody of the IDOC, less credit for time served. (*Id.*)[2] The trial centered on events which occurred shortly after Christmas, 1999. On December 26, 1999, Chicago Police Officer Brian Blackman ("Blackman") and other CPD officers responded to a call concerning Apartment 1308 at 4022 South State Street, a Chicago Housing Authority residence sometimes referred to as the Robert Taylor Homes. (*Id.*, Ex. D at 2.) A woman named Katherine Ellis answered the door and let the officers into the apartment. (*Id.*)

Testimony at the bench trial differed as to what occurred inside. (As explained later, the trial judge credited the State's evidence and rejected the testimony of Petitioner.) According to the State, as Officer Blackman entered the living room, Petitioner's co-defendant at trial, Elliot Bibbie ("Bibbie"), ran towards the rear bedroom of the apartment clutching the right side of the jacket he was wearing. (*Id.*) Officer Blackman, concerned that Bibbie might have been holding a weapon in his jacket, followed the co-defendant into the rear room. (*Id.*, Ex. C at 8; *see also id.*, Ex. D at 3.) When Officer Blackman entered the room, he saw Bibbie and Petitioner sitting next to each other on a bed. (*Id.*, Ex. D at 2.) The jacket lay on the floor. (*Id.*) When Officer Blackman retrieved the jacket from the floor, a bag containing seventeen smaller bags with a crushed leafy substance later stipulated to be cannabis and $261 fell to the floor. (*Id.*) The officer arrested Bibbie and later recovered two bags of heroin from his pants pocket. (*Id.*)

After Bibbie was taken into custody, Ms. Ellis, the leaseholder, signed a consent form for

<hr/>

[2] It appears that the time served was in connection with a subsequent armed robbery arrest that took place after the events that led to Petitioner's arrest for narcotics dealing, which resulted in the conviction at issue here. (D.E. 14, Ex. D at 16-17.) Although it is unclear how the time served issue was ultimately resolved (the Illinois Court of Appeals remanded only the portion of Petitioner's state court appeal that involved his time-served claim and otherwise affirmed (*id.*)), Petitioner makes no complaint in his Petition about any time-served issue or any issue relating to the computation of his sentence.

2

the officers to search her apartment. (*Id.*) In a second room, the officers found a police scanner and a black plastic bag containing fifty-five bags of cannabis, thirty-seven bags of cocaine, a "chunky lump" of cocaine weighing 61 grams, and $3,981 in cash. (*Id.*, Ex. D at 2-3.) Officer Blackman, after speaking with Ms. Ellis about who usually stayed in the room where the scanner and black bag were found, immediately advised Petitioner of his constitutional rights and placed him under arrest. (*Id.* at 3; *see also id.*, Ex. C at 9.) Petitioner admitted that the bag and its contents were his. (*Id.*, Ex. D at 3.) Petitioner also later admitted at trial that Ms. Ellis, the woman in whose apartment the drugs were found, was Petitioner's girlfriend. (*Id.* at 4.)

Petitioner's version of what occurred differed markedly at trial. Petitioner asserted that when the officers entered the apartment, Petitioner and Bibbie were sitting on the bed in the rear room watching television. (*Id.*) He also apparently contended that Bibbie did not have a coat in the room. (*Id.*, Ex. B at 6.) Officer Blackman and two other officers entered the room with guns drawn, and the officers took Petitioner and Bibbie to the living room and sat them on the couch. (*Id.*; *see also id.*, Ex. D at 4.)

Petitioner also claimed that thereafter officers took Bibbie into the bathroom for approximately fifteen minutes and beat him up there. (*Id.*; *see also id.*, Ex. B at 6.) (Although not material to the disposition of the case, it appears that Bibbie, who was tried with Petitioner, did not allege any police misconduct, let alone physical abuse or beating. (*Id.*, Ex. C at 23).) Petitioner conceded that he was never struck. (*Id.*, Ex. B at 6.) Petitioner further claimed that he was never shown the plastic bag containing the narcotics and other materials. (*Id.*, Ex. D at 4.) Petitioner also denied ever making any admission to any officer that the narcotics belonged to him. (*Id.*, Ex. D at 3.)

3

B.     State Court Proceedings

    1.     The Circuit Court of Cook County, Illinois

The State charged Petitioner with four narcotics charges: two counts of possession of a controlled substance with intent to deliver (more than fifteen grams but less than one hundred grams of cocaine), one count of possession of a controlled substance within public housing with intent to deliver (between one and fifteen grams of cocaine), and possession of between thirty and five-hundred grams of cannabis with intent to deliver. (*Id.*, Ex. B at 4.)

At the bench trial, Petitioner denied making any inculpatory admission. (*Id.*, Ex. D at 3.) As mentioned, Officer Blackman testified that, after he "advised [Petitioner] of his rights," Petitioner admitted the illegal substances belonged to him. (*Id.*, Ex. B at 14 (quoting Officer Blackman's trial testimony).) The trial judge recognized that the outcome of the trial largely came down to a credibility assessment concerning the testimony given by Petitioner and Officer Blackman. (*Id.*, Ex. D at 5 ("The question comes down to the believability of the witnesses.").) On that issue, the trial court found that Officer Blackman's testimony was credible and credited it in finding Petitioner guilty. (*Id.*, Ex. D at 5 ("Having heard the testimony, I find the police officer credible.").) The court convicted Petitioner of possession of cocaine within public housing with intent to deliver and sentenced him to twelve years imprisonment in the IDOC. (*Id.*)[3]

---

    [3] It appears from the certified statement of conviction that the trial court convicted Petitioner of all the narcotics charges. (D.E. 14, Ex. A at 3) (reflecting a finding of guilty on counts 1-4).) The appellate opinion only specifically mentions the conviction for possession of a controlled substance within public housing with intent to deliver. (*Id.*, Ex. D at 1.) Neither party makes anything of the issue and it appears that the issue is not material to the evaluation of whether Petitioner's challenge to the judgment of the Illinois courts is a winning one.

### 2. The Illinois Court of Appeals

Petitioner appealed his conviction to the Illinois Court of Appeals. (*See id.*, Ex. B.) On appeal, Petitioner argued, *inter alia*, that his trial counsel was ineffective under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to file and litigate a motion to quash Killingsworth's statement because there was no evidence that he knowingly, voluntarily and intelligently waived his right to remain silent." (*Id.*, Ex. B at 13.) Specifically, in his brief to the Illinois Court of Appeals, Killingsworth asserted that there was no evidence that he was properly advised of his *Miranda* rights because Officer Blackman, although testifying that he advised Petitioner of his "constitutional rights," failed to testify as to exactly what rights he articulated to Petitioner. (*E.g.*, *id.*, Ex. B at 14 (["Officer] Blackman testified that he advised Killingsworth of his 'constitutional rights,' but did not state what those rights were.") Petitioner further asserted that the lack of sufficient evidence that he was properly informed of his *Miranda* rights meant there was no evidence that he waived his rights knowingly, voluntarily, and intelligently. (*Id.*, Ex. B at 15.) Thus, Petitioner asserted that there was "no reason for [his] trial attorney not to file a motion to suppress his alleged statement to the police," which, he maintains, would necessarily have succeeded. (*Id.*)

The Illinois Court of Appeals denied Petitioner's appeal in material part. The court determined that Petitioner failed to show that his counsel's performance was deficient and that the outcome of his trial was not prejudiced by any alleged deficiency. (*See id.*, Ex. D at 8-11 (citing and applying, *inter alia*, *Strickland v. Washington*, 466 U.S. 668 (1984).) It also found that Petitioner's counsel's decision whether to pursue a motion to suppress in connection with the trial was a strategic one, based on the defense strategy employed that Petitioner did not make

5

the admission at all. (*Id.*, Ex. D at 11.) In this regard, the court stated that "the defense presented in this case was that defendant did not tell Officer Blackman that the drugs were his." (*Id.*) The court reasoned that, "[g]iven that line of defense, counsel would have had no reason to seek the suppression of evidence or challenge Officer Blackman's testimony regarding the *Miranda* warnings because those tactics would be inconsistent with the premise that defendant did not make an inculpatory statement in the first place." (*Id.*)

3.    The Supreme Court of Illinois

After the appellate court upheld his conviction, Petitioner filed a petition for leave to appeal in the Supreme Court of Illinois. (*See* D.E. 14, Ex. E.) In that filing, Petitioner presented the *Strickland* issue to the state Supreme Court as he had to the appellate court. (*Id.*, Ex. E at 3-5; *see also id.*, Ex. E at 5 ("As the appellate courts are the most common forum for claims of ineffectiveness, parties should be able to rely upon them for accurate guidance in this area of law. Therefore this Court should grant Killingsworth's petition for leave to appeal.").) The Illinois Supreme Court denied Petitioner's petition for leave to appeal. (*Id.*, Ex. F.)

Petitioner is currently incarcerated pursuant to the judgment of the Circuit Court of Illinois (*id.*, Ex. D at 1), and he now petitions this Court to grant him a writ of habeas corpus on the ground that his counsel was ineffective for failing to pursue a motion to suppress the inculpatory statement he allegedly made after his arrest. (*See* Petition at 5.) The State filed an answer to Killingsworth's Petition (D.E. 13), and included a copy of the Certified Statement of Conviction in *People v. Killingsworth*, No. 00CR0264701 (Ill. Cir. Ct. 2001) (*Id.*, Ex. A); a copy of Killingsworth's brief filed with the Illinois Court of Appeals (*Id.* Exhibit B); a copy of the State's response brief filed with the Illinois Court of Appeals (*Id.*, Exhibit C), a copy of the

6

decision of the Illinois Court of Appeals rejecting Petitioner's appeal in material part (*Id.*, Exhibit D); a copy of the petition for leave to appeal to the Supreme Court of Illinois (*Id.*, Exhibit E); and a copy of the Supreme Court's denial of the petition for leave to appeal (*Id.*, Exhibit F).[4]

## II. LEGAL PRINCIPLES

### A. Authority to Grant a Writ of Habeas Corpus and Standard of Review

"[A] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the grounds that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In that regard, the Supreme Court has recognized a "presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002). Section 2254(d) of Title 28 of the United States Code ("Section 2254(d)") "demands that state-court decisions be given the benefit of the doubt." *Id.*, 537 U.S. at 24. "[I]t seems clear that Congress intended federal judges to attend with the utmost care to state-court decisions, before concluding that those proceedings were infected by constitutional error sufficiently serious to warrant the issuance of the writ." *Williams v. Taylor*, 529 U.S. 362, 386 (2000) (opinion of Stevens, J.).

Thus, Section 2254(d), as amended by the Anti-Terrorism and Effective Death Penalty

---

[4] The Seventh Circuit teaches that a district court is not normally required to obtain and review the underlying trial transcript and exhibits from the state court criminal trial. *See, e.g.*, *Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004) ("While the review of a state court transcript is occasionally necessary in habeas cases, it is certainly not required and is, in fact, quite rare."). The parties are required to quote and/or provide relevant materials, as they have done here, and the federal habeas court also can rely on facts as found in the Illinois appellate court ruling. *See id.* Therefore, the Court in this case followed the usual practice, and finds that thorough consideration and review of Petitioner's claims can take place on the basis of the record assembled by the parties. (The Court also notes that neither party requested a hearing or suggested that one was necessary to fairly resolve the Petition.)

Act ("AEDPA"), teaches that a federal court may only grant a habeas petition concerning a person in state custody if one of two conditions is satisfied. First, the writ is to be granted if adjudication of the claim in the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Second, a writ of habeas corpus should be granted when the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Under the "contrary to" prong, a state court's decision is subject to *de novo* review. *Anderson v. Cowan*, 227 F.3d 893, 896 (7th Cir. 2000) (citing *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999)). A petition falls under Section 2254(d)'s "contrary to" clause when "the state court applies a rule that contradicts the governing law set forth in our cases." *Williams*, 529 U.S. at 405. Courts also review habeas petitions *de novo* under the "contrary to" framework when "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 406; *accord Huynh v. Bowen*, 374 F.3d 546, 548 (7th Cir. 2004) (quoting *Williams*, 529 U.S. at 406).

Killingsworth's Petition does not fall under the "contrary to" framework established by the Supreme Court. First, he does not appear to ground his petition under this prong. Even if he had, however, in *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court stated that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Id.*, 529

8

U.S. at 406. As an example of a claim that would not fit within the "contrary to" framework, *Williams* specifically identified a "state-court decision on a prisoner's ineffective-assistance claim [that] correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] as the controlling legal authority and, applying that framework, rejects the prisoner's claim." *Id.* That is precisely the situation presented to the Court in the case *sub judice*. The Illinois Court of Appeals identified and applied *Strickland* to Killingsworth's ineffective assistance claim as set out by the Supreme Court. *See* D.E. 14, Ex. D at 8. Moreover, after having conducted a thorough review, this Court cannot find any use, or potential use, by the Illinois court of an ineffective assistance rule contrary to that articulated by the Supreme Court. Therefore, the instant case is not appropriately considered under the "contrary to" framework.

Under the "unreasonable application of" clause of § 2254(d)(1), the Court defers to "a reasonable state court decision." *Anderson*, 227 F.3d at 896-97 (citing *Schaff v. Snyder*, 190 F.2d 513, 522 (7th Cir. 1999)). It is upon this ground that Petitioner bases his argument. (D.E. 1 at 10 ("The Appeals Courts [sic] reasoning is flawed in it's [sic] analysis . . . .").) "[W]hen a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause." *Williams*, 529 U.S. at 409. In this regard, the Supreme Court has repeatedly instructed that an unreasonable application of federal law is something more than simply an application that the habeas court might not itself have reached in the first instance or that the habeas court thinks is simply incorrect. Thus, for example, in *Woodford*, the Supreme Court explained the role a federal habeas court is to play:

9

Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied *Strickland* incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. An *unreasonable* application of federal law is different from an *incorrect* application of federal law. The Ninth Circuit did not observe this distinction, but ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d).

*Id.*, 537 U.S. at 24 (internal citations and quotation marks omitted; emphases in *Woodford*); *accord, e.g., Williams*, 529 U.S. at 410 ("[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."). Accordingly, the Court will be called upon to determine whether the Illinois appeals court made an unreasonable determination in rejecting Petitioner's appeal.[5]

B.     Exhaustion

A court cannot grant a writ of habeas corpus from a state-court decision unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement means that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The Supreme Court pointed out that, whether or not the Illinois Supreme Court exercises its discretion to grant a petition for leave to appeal, "a petition for discretionary review in

_____

[5] Although the Supreme Court has repeatedly instructed that there is a difference between merely an incorrect application of a Supreme Court precedent and an objectively unreasonable one (only the latter being enough to ground habeas relief), in this case the distinction is not material. In this Court's view at least, the Illinois Court of Appeals correctly concluded under *Strickland* that Petitioner's counsel was not constitutionally inadequate.

Illinois's Supreme Court is a normal, simple, and established part of the State's appellate review process." *Id.* at 845. As a result, it must be invoked. *Id.*; *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999)). Failure to present an issue to the Illinois Supreme Court therefore precludes relief.

     C.     Procedural Default

Relatedly, Petitioner also may only present claims for relief that are not procedurally defaulted. A claim can be procedurally defaulted in several ways. First, if a judgment by a state court "rests on a state law ground that is independent of the federal question and adequate to support the judgment," then the Court cannot review a question of federal law. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This default bar applies even if the state law ground is procedural rather than substantive. *See id.* The underlying reason for this procedural default bar is "grounded in concerns of comity and federalism." *Id.* at 730. Habeas review is only available for violations of federal law. If this procedural default bar were not in place, "habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of [a federal court's] jurisdiction and a means to undermine the State's interest in enforcing its laws." *Id.* at 730-31.

Second, a claim is procedurally defaulted if it was not presented for a full round of review in Illinois's appellate system. This can occur when a petitioner has failed to present in a timely manner claim(s) in a round of appellate review. *See O'Sullivan*, 526 U.S. at 848; *see also Hayes v. Battaglia*, 403 F.3d 935, 937 (7th Cir. 2005). A failure to timely present a claim in a round of appellate review can occur when it was not presented to *any* state court, *e.g. Johnson v. Sternes*, No. 03 C 5110, 2004 WL 527117, at *4 (N.D. Ill. March 10, 2004), or when a claim was

11

presented to the Illinois Court of Appeals but not to the Supreme Court of Illinois. *See, e.g.*,
*Rittenhouse v. Battles*, 263 F.3d 689, 697 (7th Cir. 2001) ("[T]his claim has been procedurally defaulted because [Petitioner] did not include it in his petition for leave to appeal to the Illinois Supreme Court.").

III. DISCUSSION

A. Summary of Petitioner's Claims

The arguments in Petitioner's filing are not always pellucid. However, the Court has attempted to discern the arguments as thoroughly and accurately as possible. To that end, it appears that Petitioner presents two principal issues in the Petition (at least reading it charitably). First, Petitioner asserts that his Fifth Amendment right to avoid self-incrimination was violated when he was taken into custody and "Officer Blackman failed to fully advise [him] of his rights under *Miranda* . . . prior to obtaining a statement from him during a custodial interrogation . . . ." (Petition at 8.) Next, and relatedly, Petitioner maintains that his trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), "for failing to follow through with his own trial strategy to schedule a hearing on his Motion to suppress the [statement to Officer Blackman], where such would have been granted and the outcome [of the trial] would therefore have been different." (*Id.*)

B. *Miranda* Claim

At first glance, it is unclear whether Killingsworth asserts his *Miranda* claim as an independent ground for habeas relief. He states that Officer "Blackman failed to fully advise the defendant of his rights under *Miranda.*" (*Id.* at 8.) Petitioner previously pointed out this issue in the Illinois Court of Appeals in support of his *Strickland* claim, by pointing out that Officer

12

Blackman never testified as to the specific substance of the rights he articulated to Petitioner. (D.E. 14, Ex. B at 14.) Petitioner identifies the same issue within the Petition. (Petition at 10.)

It appears from the Petition that Petitioner intended to raise the *Miranda* issue as a first step in his syllogism to attempt to show that he received ineffective counsel and therefore should be granted habeas relief. However, in an abundance of caution, the Court notes that if Petitioner attempted to raise a free-standing *Miranda* claim as an independent ground for habeas relief, it would fail.

Petitioner's *Miranda* claim would be procedurally defaulted as an independent claim because it was not presented to the state courts in a full round of appellate review. Petitioner did not raise the issue as an independent claim in the Illinois Court of Appeals but rather raised it as part of the *Strickland* claim. *See* D.E. 14, Ex. B at 13 (Petitioner claiming on appeal that, "[i]n this case, the record shows that trial counsel was ineffective for failing to file and litigate a motion to quash Killingsworth's statement because there was no evidence that he knowingly, voluntarily, and intelligently waived his right to remain silent"); *id.*, Ex. B at 18 (Petitioner claiming that, "[t]rial counsel was ineffective for failing to file a motion to suppress" and contending that such a motion would have been granted for lack of evidence that Petitioner was fully advised of his *Miranda* rights). At no point did Petitioner treat the *Miranda* issue as an independent justification for overturning his conviction. As the Seventh Circuit explained, the emphasis when considering whether an argument is procedurally defaulted is on the actual claim, not just the facts that may have given rise to or might give notice of the claim. This is because the purpose of raising the claim is to provide to the state courts "'an opportunity to correct a constitutional violation.'" *Momient-El v. DeTella*, 118 F.3d 535, 541 (7th Cir. 1997) (quoting

*Duckworth v. Serrano*, 454 U.S. 1, 4 (1981)). In other words, the claim itself upon which Petitioner seeks relief in federal court must have been presented in materially the same form to the state courts. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) ("Thus, when the habeas petitioner has failed to fairly present to the state courts the claim on which he seeks relief in federal court . . . the petitioner has procedurally defaulted that claim.") (citations omitted); *Momient-El*, 118 F.3d at 541. Moreover, in Killingsworth's petition for leave to appeal to the Illinois Supreme Court, it is even clearer that he raised a *Strickland* claim and not a stand-alone *Miranda* claim. See D.E. 14, Ex. E at 3 ("Erik Killingsworth was denied the effective assistance of counsel because his attorney failed to file a motion to suppress statements."); *id.*, Ex. E at 5 (suggesting that Illinois Supreme Court review was appropriate in order to provide clarity concerning lower court evaluation of *Strickland* claims). Failure to present a claim to the Illinois Supreme Court is a procedural default that precludes federal habeas relief. *See, e.g., Rittenhouse*, 263 F.3d at 697.

Additionally, and independently, as discussed below, the facts of this case demonstrate that the state courts' conclusions concerning Petitioner's receipt of *Miranda* warnings and his waiver of them were neither contrary to established law nor the result of an unreasonable application of law to the facts. Therefore, even if the merits were properly before this Court, Petitioner would not be entitled to relief in any event.

C.    Ineffective Assistance of Counsel Claims

1.    *Strickland* Standard

The heart of the Petition, and an issue that was fairly presented to the Illinois courts, is Petitioner's *Strickland* claim. In *Strickland*, the Supreme Court established the framework under

14

which claims of ineffective assistance of counsel are analyzed:

> First, the defendant must show that counsel's performance was deficient. This requires showing that the counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a . . . a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.*, 466 U.S. at 687.

To satisfy the first prong, Petitioner would need to show that defense "'counsel's representation fell below an objective standard of reasonableness.'" *Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir. 2005) (quoting *Strickland*, 466 U.S. at 688)). The Seventh Circuit teaches that when considering the effectiveness of an attorney's performance, a district court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* A defendant "must direct [the Court] to the specific acts or omissions which form the basis of his claim. The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance." *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000) (internal quotation marks and citation omitted). Courts are to "indulge a strong presumption" of competence such that "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted). A court should not simply second-guess a defense counsel's assistance after a conviction or adverse sentence has occurred, because the benefit of hindsight is likely to distort the complexity of the challenges

15

presented and the reasonableness of a counsel's decision on a real-time basis. *See id.* ("A fair assessment of attorney performance requires that every effort by made to eliminate the distorting effects of hindsight . . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . "). Most criminal cases result in convictions; that does not mean that most defense counsel are acting in a constitutionally deficient or unreasonable manner.

For purposes of the second prong, a petitioner must demonstrate prejudice by some "'reasonable probability.'" *Gallo-Vasquez*, 402 F.3d at 798 (quoting *Strickland*, 466 U.S. at 694). Put differently, the Petitioner must demonstrate "'a probability [of prejudice] sufficient to undermine confidence in the outcome'" of the case. *Id.* (quoting *Strickland*, 466 U.S. at 694). This standard does not require the petitioner to convince the court that his attorney's ineffectiveness more likely than not altered the outcome in the case. *Strickland*, 466 U.S. at 693.

The Court proceeds, as did the Illinois Court of Appeals, to analyze Petitioner's claim under the teachings of *Strickland*.

      2.     Prong One: Deficiency

Petitioner's theory—that his counsel was ineffective for failing to pursue a motion to suppress because it was an essential part of a cohesive trial strategy—fails under *Strickland* because Petitioner cannot show that his counsel's performance was deficient. Reading the Petition charitably, Petitioner offers two theories concerning deficiency. Neither is persuasive.

      a.     First Theory on Deficiency Prong of *Strickland*

Under one theory, Petitioner asserts that his counsel was deficient for abandoning the overarching goal of his defense strategy: what he terms the "suppression" of inculpatory

16

statements made by Petitioner. (*See* Petition at 11 ("[C]ounsel's trial strategy, that defendant did not make an inculpatory statement . . . is merely a continuation of counsels [sic] objective strategy of suppressing the Statement.").) Petitioner makes this claim without reference to any authority for support, and his assertion seems incorrect. A strategy to deny a statement was ever made at all, one the one hand, and a strategy to suppress a statement, on the other, strike the Court as being two separate and distinct strategies, at least within the setting of Petitioner's case here.

Nonetheless, Petitioner proposes that the Illinois Court of Appeals was "flawed in it's [sic] analysis regarding the distinction between ineffective assistance of counsel and counsels [sic] trial strategy," (Petition at 10), when it found that the decision not to pursue a motion to suppress was not deficient. D.E. 14, Ex. D at 10-11 (rejecting *Strickland* claim and noting that moving to suppress would have been "inconsistent with the premise that defendant did not make an inculpatory statement in the first place").

Several problems attend to this argument. First, there is a "strong presumption" of competence by defense counsel and Petitioner must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted). In this regard, the decision whether to file a motion to suppress or not is usually a strategic call that will be given substantial deference against second-guessing. *See, e.g., Wilson v. Schomig*, 234 F. Supp. 2d 851, 871 (C.D. Ill. 2002) ("As a general rule, trial counsel's failure to file a motion [to suppress statements] does not establish incompetent representation, especially when that motion would be futile. Whether or not to file a motion is a matter of trial strategy which will be accorded great deference.")

17

(internal quotation marks and citation omitted). "There are countless ways to provide effective assistance in any given case [and]. . . the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. While it certainly would have been *possible* for Petitioner's counsel to deny an inculpatory statement was ever made and, at the same time, move to suppress the never-made inculpatory statement, it is not unreasonable that counsel would find that pursuing two inconsistent strategies would undermine his client's case in the eyes of the fact-finder. Petitioner's strategy at trial was to deny that he ever made the statement—evidence of which only came from the arresting police officer's testimony. (D.E. 14, Ex. D at 11.) Moreover, this defense approach was combined with an argument—not uncommon in the criminal defense arena, particularly in the setting of a bench trial—that Petitioner never would have admitted to ownership of the narcotics because at the time of the events Petitioner had been paroled (after armed robbery and kidnapping convictions) and he would not have jeopardized his parole status. *See id.*, Ex. D at 3 ("Defendant testified that he did not tell Officer Blackman that the drugs were his, adding that such an admission would have resulted in a violation of his parole."). Reasonable defense tactics are not subject to second-guessing simply because they did not succeed. *See Strickland*, 466 U.S. at 690. Vigorous representation of a criminal defendant often entails difficult choices that competent (indeed, first-rate) defense attorneys might make differently. *See id. Strickland* specifically counseled against the sort of second-guessing Petitioner would propose, by which defense counsel would be encouraged to employ "every possible argument" defenses, regardless of whether those defenses would be less effective (as they usually are), so as to avoid a subsequent accusation that the defense attorney left any argument untried. *See id.*

18

Correspondingly, Petitioner's assertion that the Illinois appellate court was "flawed" in its analysis does nothing to further his burden of overcoming the strong presumption that his counsel's decision not to pursue the motion constituted reasonable and adequate representation. *See id.* at 689. Petitioner proposed in both of his state court appellate briefs that there was no reason for his counsel not to pursue a motion to suppress, and he presents similar arguments in his petition to this Court. (*See* Petition at 11 ("no trial strategy . . . can justify counsel's failure").) However, as explained by the Illinois Court of Appeals, it is hardly unreasonable to conclude that moving to suppress a statement for purportedly deficient *Miranda* warnings (as explained below, that argument is a weak one anyhow) does not rest comfortably with a defense, favorably framed as a one-on-one credibility fight, in which the defendant will testify that he never made and never would have made the statements at issue.[6]

            b.     Second Theory on Deficiency Prong of *Strickland*

Reading the Petition charitably, Petitioner also urges that his counsel was deficient for abandoning the "stronger and most likely successful" position (*i.e.*, the motion to suppress) in favor of "the weaker and less likely to succeed" position. (*See id.* at 12; *see also id.* at 11 ("meaningful adversarial testing could *only* focus on a strategy which challenges the lawfulness and admissibility of the alleged confession") (emphasis added).) The Illinois Court of Appeals

---

[6] The Illinois Court of Appeals also noted that "the common law record indicates that defense counsel filed a motion to quash [Petitioner's] arrest and suppress evidence. However, the record lacks a copy of the motion, and the report of proceedings does not reflect such a motion was ever argued to the trial court." (D.E. 14, Ex. D at 10.) The Court agrees with (and certainly does not find unreasonable) the conclusion of the Illinois Court of Appeals that this suggests that Petitioner's attorney contemplated a motion to suppress, but made a strategic decision not to pursue it. (*Id.*, Ex. D at 10-11.) Indeed, Petitioner admits as much when he states that the decision to deny the existence of a confession was a "strategically weaker position" than the one Petitioner alleges his counsel should have taken. (Petition at 12.)

19

disagreed with Petitioner when he raised this argument, suggesting that defense counsel could elect not to pursue the motion to suppress to further the reasonable goal of avoiding the presentation of two inconsistent trial strategies. (D.E. 14, Ex. D at 11.) The Court agrees with the Illinois Court of Appeals; as with Petitioner's first deficiency theory, there is nothing constitutionally defective in foregoing the simultaneous employment of two defenses that, at a minimum, are in substantial tension with each other. Therefore, Petitioner's second argument is insufficient to meet the deficiency prong required by *Strickland*.

Before proceeding, it bears emphasis that defense counsel's strategy was a reasonable one, even if it ultimately did not result in an acquittal. Even without the filing of a defense motion to suppress based on the supposedly defective *Miranda* warnings, Officer Blackman at trial testified that he advised Petitioner of his "constitutional rights" before Petitioner made the admissions about the drugs. (D.E. 14, Ex. B at 14; *see also id.*, Ex. D at 9 (quoting Officer Blackman's testimony that, "'Erik Killingsworth was placed in custody and advised of his rights.'").) Petitioner argued on appeal that while Officer "Blackman testified that he advised Killingsworth of his 'constitutional rights,'" he "did not state what those rights were." (*Id.*, Ex. B at 14.)

The contention that a defense lawyer is guilty of constitutionally defective representation based on failing to file a motion to suppress under circumstances where the arresting officer spontaneously related in any event that the defendant was advised of his "rights" or his "constitutional rights" is an exceptionally weak argument. The various linguistic phrases at issue—*i.e.*, advising someone of their rights, advising someone of their constitutional rights, or advising someone of their *Miranda* rights—at least in the context of an arrest are functionally

20

equivalent and interchangeable in contemporary speech and legal jargon. *See, e.g., Conner v. McBride*, 375 F.3d 643, 652 (7th Cir. 2004) ("Conner had been apprised of his constitutional rights (*i.e.*, read his *Miranda* rights) while incarcerated in Texas and again after his arrival in Indiana."). The idea that Officer Blackman was referring to something other than *Miranda* rights when he testified that he advised Petitioner of his "rights" (D.E. 14, Ex. D at 9) or "constitutional rights" (*id.*, Ex. B at 14) at the time of Petitioner's arrest is not a contention that comports with common sense. Notwithstanding Petitioner's claim that filing a motion to suppress the (supposedly non-existent) statement was a clearly superior strategy, it is a strategy that would fail even on the record assembled in the absence of the filing of a suppression motion.

Relatedly, Petitioner appears to claim that the motion-to-suppress strategy was superior (so superior, in fact, that the Illinois Court of Appeals was unreasonable in failing to find that his defense lawyer was constitutionally inadequate for failing to adopt it) because the State could not have shown that Petitioner's waiver of his *Miranda* rights was voluntary, knowing and intelligent. (Petition at 10-11.) This position is flawed for several reasons.

First, Officer Blackman testified that he advised Petitioner of his rights before Petitioner answered a straightforward question about ownership of the drugs. (Petitioner, of course, denied that any statement was ever made.) "[A]n explicit statement of waiver [either written or oral] is not invariably necessary to support a finding that the defendant waived the right to remain silent or the right to counsel," since the facts of the particular case determine whether waiver can be inferred from the actions and words of the person interrogated. *North Carolina v. Butler*, 441 U.S. 369, 373, 375-76 (1979); *see also Stawicki v. Israel*, 778 F.2d 380, 383 (7th Cir. 1985) ("[O]nce a suspect is advised of his rights and given an opportunity to exercise them, the

21

individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. . . . An express waiver of a suspect's *Miranda* rights is not indispensable, however, to a finding of waiver.").[7] It is difficult to see how defense counsel can fairly be second-guessed for failing to adopt a strategy that would litigate whether *Miranda* rights were knowingly and intelligently waived prior to, in the defense's view, the non-making of an admission. Moreover, if the Petitioner was advised of his constitutional rights, as Officer Blackman testified, then Petitioner would have had a difficult time ultimately prevailing on any knowing waiver dispute. There is no suggestion that Petitioner is mentally impaired (his filing, in fact, suggests otherwise), or that he was intoxicated or high, nor is there any suggestion that he was threatened or coerced. He was not a juvenile. Petitioner even now does not contend that he did not and does not understand his *Miranda* rights. Under such circumstances, it is difficult to see how Petitioner, a seasoned veteran of the criminal justice system who was on parole at the time following an extended prison term for kidnapping and armed robbery, could have ultimately won a non-waiver fight about his (assertedly non-existent) admissions. *See generally, e.g., Smith v. Mullin*, 379 F.3d 919, 934 (10th Cir. 2004) (rejecting knowing and voluntary challenge and stating that "[s]ignificantly, Mr. Smith had prior experience with the criminal justice system. In 1986, he retained counsel to defend him on an assault charge, eventually pled guilty, and served time in prison. The concepts encompassed by *Miranda* were not foreign to him."); *United States v. Anderson*, 924 F. Supp. 286, 290 (D.D.C. 1996) ("Additionally, the defendant's prior experience with the criminal justice system suggests his awareness of his *Miranda* rights, as well

---

[7] Conversely, even a signed waiver is not dispositive of a claim that there was not a knowing and voluntary waiver. Each case must be evaluated on the totality of the circumstances presented.

22

as the effect of a waiver.") (citation omitted).

Accordingly, it was sensible for Petitioner's counsel to adopt an approach whereby—and consistent with Petitioner's testimony—the defense was a denial that any admission was made at all. At the least, it is clear that the Illinois court's conclusion that Petitioner's counsel was not constitutionally inadequate was not an unreasonable application of the law and therefore cannot ground federal habeas relief.

### 3. Prong Two: Prejudice

Even if Petitioner succeeded in either of his arguments under the performance prong of *Strickland*—which he did not—the Court must determine whether Petitioner has adequately demonstrated that the state appellate court's application of the second prong of the *Strickland* test was unreasonable. *See Harding v. Stearnes*, 380 F.3d 1034, 1045 (7th Cir. 2004). Petitioner relies primarily on his conclusory allegation that "[c]learly, the State would not have been able to demonstrate as required that the defendants [sic] waiver was voluntary [sic], knowingly, and intelligently done" if his counsel would have sought a motion to suppress. (Petition at 12.) After reviewing Petitioner's argument against the *Strickland* prejudice standard, the Court respectfully rejects Petitioner's position and finds that he has failed to satisfy his burden.

First, Petitioner appears to claim that the record is silent as to whether an inculpatory statement ever even occurred. (*See* Petition at 11 ("[T]he record in it of itself [sic] is silent, and the State has failed to demonstrate that the Statement was infact [sic] made.").) This argument (which perhaps is a fragment from a weak sufficiency of the evidence challenge that was rejected by the Illinois Court of Appeals and abandoned in the petition for leave to appeal (*e.g.*, D.E. 14, Ex. D. at 6)) is baseless. Even Petitioner, in his brief to the Illinois Court of Appeals, recognized

23

that Officer Blackman testified that Petitioner admitted that the black plastic bag containing the drugs was his. (See id., Ex. B at 14.) At trial, of course, Petitioner attempted to counter this testimony with his own, testifying that he never admitted to owning the drugs. (See id., Ex. B at 15.) The appellate court accurately identified the result of this strategy: the witnesses' respective credibility was at issue, so the factfinder had to decide whether to believe Officer Blackman's version or Petitioner's version of the events. (See id., Ex. D at 7.) The factfinder concluded that the officer's testimony was credible and further found Petitioner guilty beyond a reasonable doubt. (See id., Ex. D. at 7-8.) Petitioner certainly has offered nothing that would justify this Court to set aside the Illinois Court of Appeals's decision to respect the factfinding and credibility determination of the state trial court. Moreover, Petitioner makes no assertions, and he certainly does not provide any support, to indicate that a motion to suppress would have altered the trial judge's decision to find Officer Blackman credible at the trial.

Petitioner also argues that even if he did make an inculpatory statement while in Officer Blackman's custody, a motion to suppress the statement would have succeeded because "the State has produced no evidence that he was fully advised as to all his rights under *Miranda*, and as a result could not have therefore, voluntarily, knowingly, and intelligently waived such *Miranda* rights." (Petition at 11.) In his filings with the state, Petitioner relied on *People v. Morgan*, 370 N.E.2d 1063, 1067 (Ill. 1977), for the proposition that a state witness must enunciate the *Miranda* warnings that were provided when testifying that defendant was advised of these warnings. (D.E. 14, Ex. B at 15.) The Illinois Court of Appeals agreed with the State that *Morgan* was distinguishable from Petitioner's case because *Morgan* did not state the circumstances under which the *Miranda* warnings were given. (*Id.*, Ex. D at 12.) Moreover,

24

under the facts of Petitioner's case, testimony by the arresting officer that he advised Petitioner of his "'constitutional rights'" (*id.*, Ex. B at 14 (Petitioner's brief quoting officer's testimony)) is sufficient basis to support the commonsense conclusion that the Illinois courts did not misapply settled *Strickland* principles in concluding that Petitioner had failed to discharge his burden of showing a reasonable probability of a different result. *See, e.g., Gallo-Vasquez,* 402 F.3d at 798 (quoting *Strickland,* 466 U.S. at 694). In addition, as previously discussed, Petitioner offers no reasonable basis to suggest that if his counsel had pursued the motion-to-suppress strategy—notwithstanding that it was at least in material tension with the strategy that Petitioner never made the statement at all—that the circumstances surrounding the admission suggested any lack of understanding or involuntariness. Even now Petitioner does not suggest that he is not fully aware of what the *Miranda* rights entail, and he never has suggested that he was forced to speak in making a statement that he denied under oath making at all. Under such circumstances, this Court cannot fairly conclude that the Illinois courts unreasonably applied *Strickland* so as to grant federal habeas relief.[8]

---

[8] In the interests of completeness, the Court notes that neither party has requested an evidentiary hearing, and none is required. *See, e.g., Menzer v. United States,* 200 F.3d 1000, 1006 (7th Cir. 1999) (teaching that where a record conclusively demonstrates that a defendant is not entitled to relief on a collateral challenge to a conviction, "a full evidentiary hearing is not required.") (internal quotation marks and citation omitted). *Menzer* also emphasized that "[t]o allow indiscriminate hearings in federal post-conviction proceedings would eliminate the chief virtues of the justice system—speed, economy, and finality." *Id.* (internal quotation marks and citation omitted); *see also Simental v. Matrisciano,* 363 F.3d 607, 612 (7th Cir. 2004) (discussing how federal habeas courts normally do not make independent factual determinations and resolve petitions on the basis of the record submitted by the parties and assembled in the state courts). In this case, no hearing is necessary to fairly resolve Petitioner's claims.

25

IV.    CONCLUSION

For the aforementioned reasons, federal habeas relief is not warranted. The Petition is denied.

So Ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Dated:  9/1/05